Ben Sather
MURPHY MYERS PLLC
27 North 27th St., Ste 21A
Post Office Box 1619
Billings, Montana 59103
Telephone: (406) 732-6868
Facsimile: (406) 204-4662
Email: ben@murphymyers.com
*Attorneys for Plaintiff Sutton Specialty Insurance Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| SUTTON SPECIALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> GENESIS ROOFING, LLC, and KAUFFMAN QUALITY CONSTRUCTION, LLC, <br><br> Defendants. | Cause No. CV-25-93-GF-JTJ <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Sutton Specialty Insurance Company of America ("Sutton"),

through its undersigned attorneys, brings this action under the Declaratory

Judgment Act, 28 U.S.C. §§ 2201-02, against Defendant Genesis Roofing, LLC,

and Defendant Kauffman Quality Construction, LLC, alleging as follows:

## NATURE OF THE ACTION

1.      This is an action for a declaratory relief under 28 U.S.C. § 2201 related to insurance coverage for a lawsuit (with multiple claims made against Genesis Roofing, LLC) pending in Montana's Eighth Judicial District Court, Cascade County, captioned: *Matthew R. Mills, Abby Mills, and BSMC of Montana, LLC, v. Kauffman Quality Construction, LLC, dba KQC Roofing, Genesis Roofing, LLC, M&M Properties of Great Falls, LLC, and John Does 1-10 and John Doe Companies 1-10*, Cause No. DV-2025-107-PD (the "Underlying Lawsuit"), which arises from a rain event which allegedly caused damage to business properties either owned and/or leased by Matthew R. Mills, Abby Mills, and BSMC of Montana, LLC, and M&M Properties of Great Falls, LLC. A copy of the Amended Complaint filed by Matthew R. Mills, Abby Mills, and BSMC of Montana, LLC, in the Underlying Lawsuit is attached as Exhibit A. A copy of the Cross-Claim filed by M&M Properties of Great Falls, LLC, against Genesis, in the Underlying Lawsuit, is attached as Exhibit B.

2.      Sutton seeks a declaratory judgment that it has no duty to defend or indemnify Genesis Roofing, LLC, under a Commercial General Liability insurance policy issued by Sutton to Genesis Roofing, LLC, (the "Policy") with respect to the Underlying Lawsuit.

*Complaint for Declaratory Judgment*                                    Page | 2

3.     Sutton seeks a declaratory judgment that it has no duty to defend or indemnify KQC under the Policy with respect to the Underlying Lawsuit.

4.     A declaratory judgment is appropriate in this matter because Genesis Roofing, LLC, claims it is entitled to insurance coverage from Sutton with respect to the Underlying Lawsuit and Sutton disputes that it has a duty to defend or indemnify Genesis Roofing, LLC. Declaratory relief is also proper because Sutton is providing Genesis Roofing, LLC, a defense to the Underlying Lawsuit under a reservation of rights at the same time Sutton seeks this declaratory judgment.

5.     Kauffman Quality Construction, LLC, dba KQC Roofing ("KQC") is a proper party to this declaratory judgment action because KQC has requested defense and indemnification under the Policy as an additional insured. Declaratory relief is also proper because Sutton is providing KQC a defense to the Underlying Lawsuit under a reservation of rights at the same time Sutton seeks this declaratory judgment.

## THE PARTIES

6.     Plaintiff Sutton is a corporation in good standing domiciled in the State of Oklahoma.

7.     Defendant Genesis Roofing, LLC ("Genesis") is a Montana limited liability company in good standing with its principal place of business in Gallatin County, Montana.

8.     Defendant KQC is a Montana limited liability company in good standing with its principal place of business in Cascade County, Montana.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this case under 28 U.S.C.§ 1332 because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

10.    This Court has personal jurisdiction over Genesis because they claim insurance coverage for the Underlying Lawsuit under an insurance policy that Sutton issued to them while Genesis provided labor and materials to the project which is the subject of the Underlying Lawsuit.

11.    This Court has personal jurisdiction over KQC because they claim insurance coverage for the Underlying Lawsuit under the Policy that Sutton issued to Genesis as an additional insured and also because KQC provided labor and materials to the project which is the subject of the Underlying Lawsuit.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred within the District of Montana.

13.    Venue is proper in the Great Falls Division of this Court pursuant to Local Rule of Procedure 3.2(b)(1) because, the loss or injury for which the all

claimants claim insurance coverage occurred in Cascade County, Montana, and Cascade County, Montana lies within the Great Falls Division of this Court.

14.    Title 28 U.S.C. § 2201 authorizes this Court to grant the relief requested by Sutton.

## FACTS

15.    The Underlying Lawsuit, with respect to Genesis and KQC, consists of a Complaint and First Amended Complaint made by Mills against Genesis and KQC and a Cross-Claim made by M&M against Genesis and KQC.

16.    Sutton issued insurance policy, Policy No. ISCP04000034637, to Genesis Roofing, LLC, for the coverage period of July 3, 2024, to July 3, 2025. Genesis has claimed coverage under the Policy with respect to the Underlying Lawsuit. A certified copy of the Policy (with premium information redacted) is attached as Exhibit C.

## THE UNDERLYING LAWSUIT

17.    The Underlying Lawsuit consists of claims made by Mills against Genesis and KQC and by claims made by M&M against Genesis and KQC.

18.    The facts alleged in pertinent part by Mills are:

a.    Plaintiffs Matthew and Abby Mills are husband and wife and tenants in a commercial lease with M&M, as owner.

b.      Plaintiff BSMC of Montana, LLC, ("BSMC") is a Montana LLC doing business in Great Falls, Cascade County, Montana. BSMC operates under the following assumed business names: Mighty Mo Medical Supply, Your Breast Pump and the Montana Difference.

c.      BSMC is a provider of medical supplies and services with Medicare accreditation.

d.      M&M is the owner and commercial landlord of Plaintiffs Mills and BSMC's rental space.

e.      KQC is a Montana LLC operating in Great Falls, Cascade County, Montana, and operated as a roofer on the subject project.

f.      Defendant Genesis is a Montana LLC, operating in Belgrade, Gallatin County, Montana. Plaintiffs allege Genesis was a subcontractor hired by KQC to perform roofing work on the subject property owned by M&M. Plaintiff alleges Victor Padilla and Patricia Vargas are the sole members of Genesis.

g.      Plaintiffs Mills and BSMC are business tenants in the subject property owned by M&M, called "Lincon Medical Center." They leased their space in the subject property up to September 11, 2024, the alleged date of loss.

h.    On or about September 11, 2024, the roof of the subject building needed replacing and was in the process of being replaced. Defendant M&M hired KQC to replace the roof.

i.    Plaintiffs alleged KQC subcontracted its work to Genesis.

j.    Plaintiffs alleged Genesis removed the membrane roof off the building and improperly applied a tarp to the roof when Genesis left. Plaintiffs alleged Gensis did not return to complete the repairs.

k.    Plaintiffs alleged Genesis should have known that the tarp placed on the subject property was inadequate to properly cover and protect the subject property.

l.    A significant rainstorm occurred September 11, 2024.

m.    Water from the rainstorm penetrated Plaintiffs' rental unit causing significant damages.

n.    Plaintiffs allege all Defendants failed to take necessary steps to protect the leased space from water intrusion.

o.    Plaintiffs alleged they are third-party beneficiaries of the construction and roofing contracts between the Defendant contractors.

p.    Plaintiffs alleged Genesis breached its contractual duties to perform their work in a reasonable and workmanlike manner.

q.    Plaintiffs have alleged several categories of damages, including property damage, loss of use damage, lost income, loss of business opportunities, emotional distress damages, and punitive damages.

19.    Based on those allegations, the Mills Complaint in the Underlying Lawsuit alleges claims for: (1) Negligence; (2) Breach of Contract; and (3) Breach of the Covenant of Good Faith and Fair Dealing.

20.    For these causes of action, in the Underlying Lawsuit, Mills seeks the following categories of damages from Genesis and KQC (and other underlying Lawsuit Defendants): property damage, loss of use damage, lost income, loss of business opportunities, emotional distress damages, punitive damages and any other relief deemed just and necessary by the court.

21.    The facts alleged in pertinent part by M&M are:

a.    M&M owns the property and buildings located at 2517 7th Avenue South, Great Falls, Montana.

b.    In the summer of 2024, M&M determined that Lincoln Medical Court Unit B's roof was nearing the end of its useful lifespan and was due for replacement.

c.    M&M obtained a quote from KQC for "re-roofing" the subject property in August 2024.

d.    M&M alleges its subcontracted with Genesis to perform some or all of the re-roofing work.

e.    M&M alleges it was unaware that KQC contracted with Genesis until after the September 11, 2024, rainstorm.

f.    M&M alleges KQC contacted Genesis through Mr. Padilla between 4:00 and 5:00 pm on September 11, 2024, to inquire whether Genesis had placed a moisture barrier over the subject property's roof to protect it from moisture intrusion for an expected rainstorm.

g.    M&M alleges that neither KQC or Genesis placed or installed a moisture barrier to project Lincoln Medical Center.

h.    M&M alleges Genesis left the Lincoln Medical Center on September 11, 2024, before the rainstorm and never returned.

i.    M&M alleges it is common practice in the roofing industry to place a temporary moisture barrier over a building's roof when re-roofing when there is a chance of a moisture event during the project until a total moisture barrier is in place.

j.    M&M allege the moisture exposure has rendered the subject property unusable for M&M's commercial tenants, forcing M&M to terminate its leases.

  k.  M&M has alleged loss of rental income.

  l.  The building is still unusable and it not being rented.

22. Based on those allegations, M&M in the Underlying Lawsuit alleges claims against Genesis and KQC for: (1) Indemnity and Contribution; (2) Negligence; and (3) Breach of Implied Warranties.

23. For these causes of action, M&M in the Underlying Lawsuit seeks the following categories of damages: all damages stemming from Genesis' alleged negligence, attorney fees, costs and any other relief deemed just and necessary by the court.

## THE INSURANCE CLAIM

24. On or about January 13, 2025, Croft ClaimWorks, LLC, (on behalf of KQC) tendered claims made by M&M against KQC directly to Genesis for defense and indemnification.

25. On or about February 10, 2025, Sutton, through its third-party claims administrator Golden State Claims ("Golden State") received, via facsimile, notice of the demand for defense and indemnification from Sutton's insured, Genesis.

26. Golden State subsequently advised Genesis that it would undertake an investigation to determine whether there was insurance coverage available to Genesis for any claims asserted or any eventual legal actions.

27.     Sutton, through Golden State subsequently advised M&M, through

M&M's counsel, that it would undertake an investigation to determine whether

there was insurance coverage available to Genesis for any claims asserted or any

eventual legal actions.

28.     Sutton, through Golden State, provided a defense to Genesis by hiring

attorney Bryan M. Kautz, Billings, Montana, to represent Genesis on or about May

1, 2025.

29.     On August 22, 2025, Sutton sent Genesis a Reservation of Rights

("RoR") letter explaining to Genesis why there might not be coverage for the

Underlying Lawsuit, but that Sutton would provide Genesis a defense to the

Underlying Lawsuit while Sutton continued its investigation, subject to a complete

reservation of Sutton's rights under law, equity, and the insurance policy, including

Sutton's right to withdraw the defense and/or seek a declaratory judgment that the

Company has no duty to defend or indemnify Genesis with regard to the

Underlying Lawsuit. A copy of the RoR is included as Exhibit D.

30.     On August 22, 2025, Sutton sent KQC a Reservation of Rights ("KQC

RoR") letter, accepting KQC's demand for a defense while explaining to KQC,

though counsel why there might not be coverage for the Underlying Lawsuit, but

that Sutton would provide KQC a defense to the Underlying Lawsuit while Sutton

continued its investigation, subject to a complete reservation of Sutton's rights

under law, equity, and the insurance policy, including Sutton's right to withdraw the defense and/or seek a declaratory judgment that the Company has no duty to defend or indemnify Genesis and/or KQC with regard to the Underlying Lawsuit. A copy of the KQC RoR is included as Exhibit E.

31.    Sutton, through Golden State, provided a defense to KQC by hiring attorney Jennifer Crow, Scheer.Law, PLLC, Portland, Oregon, to represent KQC as set forth in the KQC RoR.

## **THE INSURANCE POLICY**

32.    While the Policy provides various coverages, only the liability coverages are at issue here.

33.    Section, I, Coverage A – Bodily Injury and Property Damage Liability of the Policy provides that:

> **1(a)(1)**. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend you, the Named Insured, against any "suit" seeking "damages" to which this insurance applies, and which is timely reported to us as provided hereunder. Except as otherwise provided in this policy, we have no duty to defend any other insured. Our duty to defend you is further limited as provided below and in the exclusions made part of this policy. We will have no duty to defend any insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply and/or which is not timely reported to us. We may at our discretion investigate any occurrence and settle any claim or suit that may result.

> \*\*\*\*

*Complaint for Declaratory Judgment*                                  Page | 12

**1(a)(5).** Notwithstanding the law pursuant to which this policy shall be construed ,we may look to and consider extrinsic evidence outside of the allegations and/or facts pleaded by any claimant to determine whether we owe a duty to defend or indemnify against any "claim" or "suit". We may, at our discretion, investigate any "occurrence" and settle any "claim" or "suit" that may result.

****

**1(b)(1)**. The "bodily injury" or "property damage" is caused by an "occurrence" that first takes place or begins during the "policy period". An "occurrence" is deemed to first take place or begin on the date that the conduct, act or omission,  process,  condition(s)  or circumstance(s) alleged to be the cause of the "bodily injury" or "property damage" first began, first existed, was first committed, or was first set in motion, even though the "occurrence" causing such "bodily injury" or "property damage" may be continuous or repeated exposure to substantially the same general harm;

34.    The quoted words are defined by the Policy. These include the following:

5. "Bodily injury" means physical injury, sickness, disease or death sustained by a person that first happens or begins during the policy period. "Bodily injury" does not include mental anguish, emotional distress or emotional damages or injury(ies) of any kind.

9. "Damages" means the monetary portion of any judgment, award or settlement approved by us; provided, however, that "damages" shall not include:

13. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

     b.  you have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by:

       a.  the repair, replacement, adjustment or removal of "your product" or "your work"; or

       b.  your fulfilling the terms of the contract or agreement.

19. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. "Occurrence" as used herein refers to the earliest act, omission, or creation of conditions or circumstances that give rise to any "property damage", "bodily injury" or "personal or advertising injury".

21. "Policy period" means the period beginning with inception date and ending with the expiration date shown in the Declarations or earlier date of termination or cancellation.

23. "Products-completed operations hazard":

     a.  includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

     (1) products that are still in your physical possession; or

     (2) work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

     (i) when all of the work called for in your contract has been completed; or

     (ii) when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

     (iii)  when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

       Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    b.  Does not include "bodily injury" or "property damage" arising out of:

        (1) the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        (2) the existence of tools, uninstalled equipment or abandoned or unused materials; or

        (3) products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit

24. "Property damage" means:

    a.  physical injury to tangible property caused by an "occurrence" that first takes place or begins during the "policy period"; or

    b.  loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. Loss of use of tangible property alone, without any physical damage to any tangible property, does not constitute "property damage".

For the purposes of this insurance, "electronic data" is not tangible property.

\* \* \*

28. "Your product":

    a.  means:

        (1)      Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (i) you;

        (ii) others trading under your name; or

        (iii) a person or organization whose business or assets you have acquired; and

        (iv) containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b.  "Your Product" includes:

       (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

       (2) The providing of or failure to provide warnings or instructions.

    c.  "Your Product" does not include vending machines or other property rented to or located for the use of others but not sold.

29. "Your work":

    a.    means:

       (1) work or operations performed by you or on your behalf; and

       (2) materials, parts or equipment furnished in connection with such work or operations.

    b.    "Your Work" includes:

       (1) warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

       (2) the providing of or failure to provide warnings or instructions

35.    The Policy contains exclusions, including the following relevant exclusions to liability coverage:

i.  **Damage to Property**

    "Property damage" to:

* * *

    (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf or performing operations, if the "property damage" arises out of those operations; or

    (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

j.  **Damage to Your Product**

*Complaint for Declaratory Judgment*              Page | 16

"Property damage" to "your product" arising out of it or any part of it.

k. **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

r. **Open Structure "Water" Damage**

Any "claim" for "bodily injury" or "property damage" to any building or structure or to any property within such building or structure that arises out of, results from, is caused by, contributed to, alleged to be, or in any way involving, in whole or in part, "water", any liquid, rain, hail, sleet or snow entering such building or structure from any area of the structure where the exterior or interior waterproof protective covering has been removed for any reason, in whole or in part, regardless of the manner of removal, or has not been installed or has been installed incompletely or installed or secured inadequately or improperly. This exclusion applies even when a temporary covering has been utilized but failed, whether the installation of such temporary covering was, or was not, done properly.

aa. **Hospital, Medical or Care Facilities**

"Bodily injury", "property damage", or "personal and advertising injury" arising out of "your work" or "your product" where "your work" was performed at a permanent or temporary hospital, medical office, care facility, retirement home, group home, assisted living facility, pharmaceutical building or warehouse, medical supply building or warehouse, urgent care, surgery, long term care, immediate care, in-patient or out-patient facility, doctor office, dental office, veterinary facility, or any medical or healthcare facility, regardless of the type of medical practice, assistance, or care provided**.**

This exclusion applies to any insured, and notwithstanding any other provisions of this policy extends to exclude coverage for any insured with respect to any "claim" by a person or organization that claims to be an indemnitee of any insured pursuant to a written contract or otherwise.

ak. **Undisclosed Waterproofing Operations**

"Bodily Injury" or "property damage" arising out of, resulting from, caused by, contributed to by, alleged to be, or in any way involving, in whole or in part, to any and all undisclosed waterproofing operations performed by or

on behalf of the Named Insured or any insured. For purposes of this exclusion, the term "undisclosed waterproofing operations" shall be defined as waterproofing work not identified in the application for insurance in obtaining this policy.

36.     The following exclusions are contained in Section II of the Policy and apply to Coverages A and B:

a. **Breach of Contract/Contractual Liability** "Bodily injury", "property damage", or personal injury or advertising injury" arising, directly or indirectly, out of the actual or alleged breach of any contract or agreement or for which any insured is obligated to pay "damages" (including attorneys' fees and costs) by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to liability for "damages":

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "occurrence" and the "bodily injury" or "property damage" resulting therefrom take place subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and litigation expenses incurred by or for a party other than an insured, if otherwise covered under this policy, are deemed to be "damages" for "bodily injury" or "property damage" under this policy, provided that:

(i)     Liability to such party for, or the cost of that party's defense, has also been assumed in the same "insured contract", and

(ii)     such attorney fees and litigation expenses are for the defense of that party against a "claim" or "suit" in which "damages" to which this insurance applies are alleged.

e.  **Commercial or Mixed Use Building/Project Size Restriction Exclusion**

Any "claim" or "suit" for "bodily injury", "property damage", or "personal and advertising injury" arising out of, resulting from, caused by, contributed to by, alleged to be, or in any way involving, in whole or in part, any work or operations performed by you or any contractors, subcontractors, independent contractors (including  material  suppliers), or  individuals, regardless of employment status, working directly or indirectly on your behalf in connection with any roofing or framing work on, within, or involving any commercial or mixed-use project in which the total square footage of the structure on which you are performing work equals or exceeds twenty thousand square feet (20,000 sq. ft.). In determining the application of this exclusion, calculation of the 20,000 square foot restriction shall be determined by totaling the combined square footage of the structures located on, within, or on the project or property in which the work or operations is being performed.

r.  **Punitive Damages, Fines or Penalties**

"Claims" or liability for or arising from exemplary or punitive "damages", fines or penalties based upon, arising out of, or imposed by or under any law, statute, or ordinance of any federal, state or municipal government agency or any other types of fines, penalties, punitive "damage"s, exemplary "damages", treble  "damages", or the multiplication of compensatory "damage"s, of any nature.

s.  **Attorney, Expert, and Vendor Fees and Costs of Others**

Any "claim", "suit", demand, request, or award against any insured, for any attorney fees and costs, expert fees and costs, related vendor fees and costs, sanctions or any other cost or expense incurred by any other party to any "claim" or "suit", including any insured under this policy.  This exclusion applies regardless of whether any of the expenses or costs described above are/were awarded in a suit as damages or costs.

v. **Force Majeure or Acts of God**

*Complaint for Declaratory Judgment*

"Bodily injury", "property damage" or "personal and advertising injury arising out of, resulting from, caused by, contributed to, or in any way involving, in whole or in part, from any naturally occurring event, including, but not limited to the following:

(1) Weather related events, such as hurricanes, tornados, tropical storms, severe winds, hail, lightning, and floods;

ag. **Mental Injury**

Any "claim" for, or "occurrence" or "suit" arising out of, emotional distress, mental anguish, humiliation, mental distress, mental injury, mental suffering, worry, annoyance, anxiety, inconvenience, depression, dissatisfaction, or shock to the nervous system or any physical manifestation of any of the foregoing, or any similar injury. This exclusion extends to any "claims" for "bodily injury", "property damage", or other "damages" claimed to arise from or relate to emotional or mental "damages" or injury in whole or in part.

37.    Because there is no coverage for the Underlying Lawsuit, Sutton has no duty to defend or indemnify Genesis and is therefore entitled to a declaratory judgment accordingly.

## COUNT I - DECLARATORY JUDGMENT

38.    Sutton incorporates all of the preceding allegations as if set forth fully herein.

39.    The Underlying Lawsuit does not trigger coverage for "bodily injury," "property damage" or "personal injury" caused by an "occurrence" as those terms are defined by the Policy and under Montana law.

40.    Accordingly, Sutton has no duty to defend or indemnify Genesis and/or KQC against the Underlying Lawsuit under the Policy.

41.    Exclusions also bar coverage.

42.    Exclusion j (Section I) precludes coverage for "property damage" to "your product" arising out of it or any part of it.

43.    Exclusion r (Section I) precludes coverage for damages to any property where there is "open structure 'water damage'".

44.    Exclusion aa (Section I) precludes coverage for damages to any "hospital, medical or care facilities" arising out of "[Genesis's] work" or "[Genesis's] product" performed at a hospital, medical or care facility.

45.    Exclusion a (Section II) precludes coverage for any claims for breach of contract.

46.    Exclusion e (Section II) precludes coverage for any claim or damages made against Genesis where Genesis was performing work on a structure which is greater than 20,000 square feet.

47.    Exclusion r (Section II) precludes coverage for punitive damages.

48.    Exclusion s (Section II) precludes coverage for attorney fees, expert fees and costs of others.

49.    Exclusion v (Section II) precludes coverage for any damages stemming from "force majeure or acts of God."

50.    Exclusion ag (Section II) precludes coverage for any allegation of mental injury.

51.    Other provisions and/or exclusions in the Policy may either not provide or otherwise preclude coverage.

52.    Consequently, there is no duty to defend because (1) the Underlying Lawsuit's allegations, if taken as true, do not fall within a coverage grant under the Policy; and/or (2) the allegations are excluded by the Policy.

53.    There is no duty to indemnify because there is no duty to defend.

WHEREFORE, Sutton requests that this Court enter Judgment against Defendants as follows:

A.    Declaring that Sutton does not owe a duty to defend or indemnify Genesis, KQC and/or any other claimed additional insured in relation to the Underlying Lawsuit;

B.    Declaring that no claimant against Genesis and/or KQC may collect any judgment or settlement from Sutton; and

C.    Providing further relief the Court deems necessary.

DATED this 16th day of October, 2025.


/s/Ben Sather
Ben Sather
MURPHYMYERS, PLLC
*Attorneys for Plaintiff*